El Pueblo de Puerto Rico, demandante y apelado, *v.* José Manuel Pereira López, acusado y apelante.

Núm. 9139.—*Sometido:* Junio 1, 1942. *Resuelto:* Junio 23, 1942.

*J. Valldejuli Rodríguez* y *Ernesto J. Fonfrías,* abogados del apelante;
*Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal
del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,*
abogados de El Pueblo, apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

En relación con un supuesto delito de asesinato de que fué absuelto el apelante, se le acusó además de portar armas prohibidas y de infracción a la ley sobre registro de armas. Estos dos casos fueron sometidos por la prueba practicada en el de asesinato, a base de la cual el apelante fué convicto y sentenciado en uno y otro a seis meses y dos años de cárcel, respectivamente.

Sostiene el apelante que al imponerle el máximum de la pena en los dos casos, actuó la corte movida por pasión, prejuicio y parcialidad y en prueba de ello cita las siguientes manifestaciones vertidas por el juez inferior en el acto de dictar las sentencias recurridas, a saber:

"En este caso el fiscal lo acusó a usted de un delito de asesinato y el jurado lo declaró a usted no culpable. La corte desea manifestar que no creyó en absoluto la teoría de la defensa propia, o en otras palabras que la corte cree que usted asesinó a Marcelino Clemente cuando éste estaba en el billar poniendo un taco en la taquera. La corte no creyó en su testimonio ni en el testimonio de su novia en ese sentido. La corte cree que al ejercitar su discreción debe ejercitarla en contra suya. No es lo mismo dejar de registrar un arma que no se utiliza para cometer delito y dejar de registrarla para cometer un delito de asesinato. En realidad de verdad la corte cree que usted asesinó alevosamente a Marcelino Clemente. La corte cree que en ambos casos debe ejercitar su discreción imponiéndole el máximum de la pena.

"En el caso de portar armas prohibidas, la corte le impone seis meses de cárcel y en el caso de infracción a la Ley núm. 14 de 1936, la corte le impone el máximum, o sea que le impone dos años."

Convenimos con el juez inferior en que el acusado es culpable tanto del delito de portar armas prohibidas como del de dejar de registrarla. En cuanto al primero, surge de la declaración del propio apelante que él portaba el revólver que utilizó para dar muerte a Marcelino Clemente. En cuanto al segundo, estipularon la defensa y el fiscal que el arma no estaba registrada a nombre del acusado en el cuartel de la policía de San Juan y de la prueba de descargo resultó que en la fecha del delito el acusado residía en San Juan, quedando así probados los elementos constitutivos de este delito. Pero, ¿justifican las circunstancias concurrentes que se imponga al acusado el máximum de la pena en cada uno de estos casos? Concedemos que al serle sometidos al juez inferior los dos casos *misdemeanor* por la prueba practicada en el de asesinato, su facultad en cuanto a la apreciación de la prueba no estaba supeditada a la conclusión a que hubiese llegado el jurado en relación con el delito de asesinato. La prueba con respecto a la defensa propia fué contradictoria. No puede decirse que el veredicto del jurado fuese arbitrario o manifiestamente erróneo. La evidencia del fiscal y de la defensa sobre dicho extremo estuvo virtualmente balanceada. Todo dependía del crédito que se diese a unos y otros testigos. El jurado lo dió a los de la defensa. El juez a los del fiscal. Pudo creer el juez inferior, como en efecto creyó, que el acusado, no obstante el veredicto, era en realidad culpable de asesinato y considerando que había utilizado el arma para dar muerte a un semejante, tomar en cuenta esa circunstancia en el ejercicio de una sana discreción en la imposición de la pena. No se entienda sin embargo que el juez sentenciador al apreciar la prueba puede caprichosa o arbitrariamente descartar o ignorar evidencia de hechos físicamente posibles que no han sido en forma alguna contradichos o impugnados

y en relación con los cuales no existan otros elementos que hagan que esa evidencia sea indigna de crédito. En otras palabras, la discreción debe ser una sana discreción, pero una vez que en el ejercicio de la misma entra el capricho o la arbitrariedad, deja de ser sana discreción para convertirse en mera arbitrariedad, desprovista de toda sanción legal. Claro es que la discreción judicial en la apreciación de la prueba se refleja en la imposición de la pena. A mayor grado de culpabilidad, mayor debe ser el castigo.

En el presente caso el juez inferior ignoró o descartó sin razón alguna para ello la evidencia que presentó la defensa, demostrativa sin lugar a dudas, de circunstancias atenuantes que en el ejercicio de una sana discreción, debieron ser tomadas muy en cuenta en la imposición de la pena en los delitos que nos ocupan, que como hemos dicho, están íntimamente relacionados con el de asesinato de que fuera absuelto el apelante. Veamos en qué consisten las circunstancias atenuantes.

El apelante en la fecha de los sucesos y cuando se celebró el juicio era un adolescente. Al referirse a él abogados y testigos le llamaban ''este muchacho''. No tenía antecedentes penales de ningún género. Hacía poco tiempo había abandonado la escuela Baldorioty de esta ciudad, que es una escuela primaria, para colocarse de mensajero en las oficinas del telégrafo insular. Su conducta en la oficina era buena, era cumplidor de su deber, como declaró el superintendente del telégrafo insular señor Generoso Flores. Pero este muchacho que así se comportaba, desde que asistía a la escuela Baldorioty era perseguido por el interfecto Marcelino Clemente (a) Gofio, hombre mayor de 30 años, de muy mala reputación, de ocupación boxeador, físicamente fuerte, pero un pervertido sexual. Para lograr su propósito de utilizar al muchacho para satisfacer sus bestiales instintos, adoptó primero el halago. Sabiendo que el niño era aficionado al boxeo lo invitaba, en compañía de otros niños en relación con

los cuales tenía semejantes intenciones, a que fueran con él a ver las luchas pugilísticas y así fué ganando la confianza del muchacho hasta que finalmente le declaró sus intenciones, las que fueron rechazadas, alejándose desde entonces el apelante de la compañía del interfecto y dando cuenta de lo sucedido a sus padres. Persistía sin embargo el interfecto, pero convencido de que el halago no surtía el efecto deseado, recurrió entonces a la intimidación y la violencia, agrediendo al acusado donde lo encontrara, injuriándole públicamente, diciéndole que era un invertido sexual y que él (Gofio) tenía que quitarle la careta. En una ocasión se acercó el interfecto a las oficinas del telégrafo insular, profiriendo los mismos insultos contra el acusado, de tal forma que el superintendente del telégrafo insular se vió precisado a obligarlo a retirarse de allí amenazándolo con llamar la policía. En otra ocasión, hallándose el apelante con su novia, una muchacha de 17 años, en la plaza San José de esta ciudad, fué encontrado allí por el interfecto y no solamente repitió las mismas injurias, sino que agredió al apelante y a su novia, según declararon éstos y el testigo Marcelino Díaz Barbosa, que tuvo que intervenir con el interfecto, y quien según su testimonio no conocía entonces ni al apelante ni al interfecto. No fueron en manera alguna contradichas las declaraciones de Generoso Flores, Marcelino Díaz Barbosa y la de los demás testigos de descargo que declararon a ese efecto. Según la teoría del apelante, fué con motivo de ser éste atacado por el interfecto con un taco de billar mientras el primero pasaba con su novia frente al billar donde a la sazón se hallaba jugando el interfecto, que el apelante, en defensa propia según alegó, dió muerte a su agresor. A nuestro juicio, consideradas esas circunstancias, erró la corte inferior al no tomarlas en cuenta. Es verdad que no constituyen una defensa, pero sí una fuerte atenuante que debe ser tomada en consideración en la imposición de la pena.

*Consideradas las circunstancias concurrentes, somos de opinión que procede en este caso modificar las sentencias apeladas, reduciendo la impuesta por portar armas prohibidas a un mes de cárcel y la de infracción a la ley sobre registro de armas a seis meses de cárcel, y, así modificadas, se confirman.*

El Juez Asociado Sr. Travieso no intervino.